**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| VICTOR ARTURO JIMENEZ TORRES<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, Attorney General of the United States;<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>ERNESTO SANTACRUZ JR., Acting Director, Los Angeles ICE Field Office; and<br><br>WARDEN, Adelanto ICE Processing Center<br><br>Respondents. | Case No.<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

**I. INTRODUCTION**

1. Petitioner Victor Arturo Jimenez Torres is 26 years old. He came to the United States as a five-year-old, enrolled in Los Angeles public schools in 2005, graduated from Carson High School in 2018, and has lived his entire life in Southern California with his family, including three U.S.-citizen siblings. He has no criminal conviction.

2. For more than ten years, the Department of Homeland Security ("DHS") granted Petitioner deferred action under the Deferred Action for Childhood Arrivals ("DACA") policy. DHS approved his requests in 2015, 2017, 2019, 2022, and 2024. The last three approvals came after a 2019 arrest that the District Attorney declined to charge, and after Immigration and Customs Enforcement ("ICE") had lodged a detainer based on that very arrest. **Petitioner filed his next renewal on November 25, 2025, five months before his deferred action expired on April 28, 2026.**

3. On July 2, 2026, while that renewal was pending, the Los Angeles Police Department cited Petitioner for a misdemeanor offense of driving under the influence. The next morning, as he walked out of the LAPD jail, ICE officers who had been waiting outside arrested him. **Nothing in ICE's own report reflects a**

**warrant or any assessment of whether he posed a danger or a risk of flight.** Twelve days later, while he was detained, USCIS denied his pending renewal.

4. On October 5, 2026, an Immigration Judge denied Petitioner's request for release on a pre-printed form. The order states, in its entirety as to reasons, that Petitioner "failed to meet his burden to establish that he is not a danger to the community and a flight risk." **It identifies no evidence, no finding, and no reason, and says an explanation will be written only if Petitioner appeals.**

5. Petitioner does not ask this Court to reweigh evidence or substitute its judgment for the Immigration Judge's. Under binding Ninth Circuit law, this Court reviews whether the agency applied the correct legal standard, *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024), and an Immigration Judge abuses his discretion when he fails to state his reasons and to address the evidence before him. An order that states no reasons at all cannot satisfy that standard.

6. Petitioner's present custody is unlawful for independent reasons, each set out in Part VI and pleaded in Part VII. First, and most directly, the only decision now cited to justify his detention—the October 5 order—states no reasons, makes no separate or precise finding on danger as the Board's own precedent requires, and does not address the highly probative evidence that was before the Immigration Judge (Count I). Second, ICE arrested him without any pre-arrest

warrant that Respondents have produced and without the likelihood-of-escape determination § 1357(a)(2) requires, after planning the arrest for hours (Count II). Third, no initial custody determination preceded his detention under § 1226(a) (Count III). Fourth, the seizure disregarded the liberty interest created by eleven years of government-conferred deferred action (Count IV). In the alternative, due process required DHS to bear the burden at any custody hearing (Count V). Counts II through IV are independent of Count I. They challenge the July 3 arrest and the deprivation of liberty that preceded any custody hearing, rest on Respondents' own records, and do not depend on the October 5 decision. The Court can and should decide them now, whatever course it takes on Count I.

7. Petitioner acknowledges, and addresses directly, contrary authority holding that a later Immigration Judge custody decision may supply an independent basis for detention and that a defective arrest does not by itself warrant release. *Jacinto Chacon v. Mullin*, 2026 WL 2127177 (C.D. Cal. July 21, 2026). That reasoning applies only where "sufficient ground for [the] detention" is otherwise shown, and it turned on a custody determination that was unchallenged, unappealed, and made after the government carried a clear-and-convincing burden. None of those conditions is present here (Part VI.D).

8. Petitioner asks the Court to order his release on conditions tailored to the only recent concern in the record, to protect him against re-detention without prior process, and, in the alternative, to hold a custody hearing before this Court.

## II. JURISDICTION

9. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), because Petitioner is in custody under the authority of the United States in violation of the Constitution and laws of the United States; under 28 U.S.C. § 1331; and under Article I, § 9, clause 2 of the Constitution. The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202 and issue writs in aid of its jurisdiction under 28 U.S.C. § 1651. A challenge to a noncitizen's present detention lies at the core of habeas. *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024).

10. Section 1226(e) of Title 8 does not bar this petition. It "does not limit habeas jurisdiction over constitutional claims or questions of law." *Martinez*, 124 F.4th at 779 (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). An agency's determination whether a noncitizen is a danger or a flight risk is a mixed question of law and fact reviewable as a question of law. *Id.* at 779, 783–84; *Santiago Morales*, 2026 WL 2678274, at *3, *5. Part VI.A addresses the scope of that review.

11. Counts II, III, IV, and V do not ask the Court to review any exercise of bond discretion. They challenge the lawfulness of the arrest, the commencement of custody, and detention imposed without constitutionally required process, questions no Immigration Judge or the Board of Immigration Appeals can decide. Their facts appear in Respondents' own I-213, Notice to Appear, and USCIS records (Exs. A, B, D). They do not depend on the October 5 decision, or its reasoning.

12. Neither 8 U.S.C. § 1252(g) nor § 1252(b)(9) bars review. Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). It is not "a shorthand way of referring to all claims arising from deportation proceedings." *Id.* Petitioner challenges none of those three actions; he challenges the lawfulness of his arrest and continued detention. Nor does § 1252(b)(9) apply. Reading its "arising from" language to reach every claim that would not exist but for the government's removal efforts "would lead to staggering results" and "would also make claims of prolonged detention effectively unreviewable," because "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place."

*Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion). Petitioner does not seek review of an order of removal or challenge any part of the process by which his removability will be determined. *See id.* at 294.

13. Respondents may note that the *Jennings* plurality observed that the detainees there were "not challenging the decision to detain them in the first place." 583 U.S. at 294. But the plurality expressly declined "to attempt to provide a comprehensive interpretation" of § 1252(b)(9), *id.*, and its reasoning applies fully here. Petitioner's claims concern the lawfulness of his custody, not his removability, and channeling them into review of a final removal order would leave unlawful detention unreviewable until it was over. *Id.* at 293. The Ninth Circuit has since confirmed that "[s]ection 1252(b)(9) is ... not a bar to jurisdiction ... because claims challenging the legality of detention ... are independent of the removal process." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810–11 (9th Cir. 2020) (citations omitted) (as quoted in *De La Rosa Gallegos v. Acting or Current Warden*, No. 5:26-cv-02376-SP, 2026 WL 3027134, at *3 (C.D. Cal. Oct. 8, 2026)).

14. Petitioner seeks only individualized relief. Section 1252(f)(1) of Title 8 bars lower courts from enjoining the operation of certain immigration provisions on a classwide basis, but expressly preserves relief "with respect to the application

of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1); *see Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).

## III. VENUE

15. Venue is proper in this district under 28 U.S.C. § 1391(e)(2). Petitioner is detained by Respondents at the Adelanto ICE Processing Center in Adelanto, California, which lies within this District and Division, and the officer in charge of custody decisions in Petitioner's case is located within this judicial district. Petitioner is subject at any time to transfer to another ICE detention facility. Undersigned counsel has no notice of any planned transfer and requests that Petitioner remain within the jurisdiction of this Court pending resolution of this Petition.

## IV. PARTIES

16. Petitioner **Victor Arturo Jimenez Torres** (A207-742-630) is a native and citizen of Mexico. He is detained by ICE at the **Adelanto ICE Processing Center,** 10250 Rancho Road, Adelanto, California 92301, within this District and Division. (Ex. G.)

17. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of DHS. In that capacity, he is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for

Petitioner's detention. He is empowered to carry out any administrative order against Petitioner and is a legal custodian of Petitioner.

18. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States and senior official of the DOJ. In that capacity he oversees the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA" or "Board").

19. Respondent DAVID J. VENTURELLA is sued in his official capacity as Acting Director of ICE. He is a legal custodian of Petitioner and has authority to release him.

20. Respondent ERNESTO SANTACRUZ JR. is sued in his official capacity as Acting Director of the Los Angeles ICE Field Office. He is charged with the detention and removal of noncitizens falling under the jurisdiction of that Field Office and is a legal custodian of Petitioner.

21. Respondent WARDEN, Adelanto ICE Processing Center, is sued in his or her official capacity as the warden of the facility where Petitioner is held. The Warden has immediate physical custody of Petitioner pursuant to a contract with ICE and is Petitioner's immediate custodian. In habeas corpus cases challenging

immigration detention, the proper respondent is the warden of the facility where the detainee is held. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

**V. STATEMENT OF FACTS**

**A. Petitioner's Residence, Family, and Work**

22. Petitioner was born in 2000 in Mexicali, Baja California, Mexico. (Ex. E at 11–13.) He came to the United States around 2005 and enrolled in the Los Angeles Unified School District on September 6, 2005. (Ex. E at 31.) The Notice to Appear alleges that he entered without inspection at an unknown place and date. (Ex. B at 1.)

23. Petitioner graduated from Carson High School on June 8, 2018. (Ex. E at 23.)

24. Petitioner has worked in automotive services and in seasonal agricultural employment, and he filed federal and California income tax returns for at least 2022 through 2025. (Ex. E at 43, 52–124.)

25. Petitioner lives with his mother and siblings at 1 Palomino Lane, Carson, California 90745. His three younger siblings are United States citizens. His father holds a USCIS Bona Fide Determination on a U-visa petition. (Ex. E at 46–49.)

26. Petitioner is in removal proceedings before the Adelanto Immigration Court on a charge under 8 U.S.C. § 1182(a)(6)(A)(i). (Ex. B at 1.) His case remains pending before Immigration Judge Curtis G. White, with a master calendar hearing set for November 3, 2026; no removal order has been entered. (Ex. H.)

**B. Eleven Years of Deferred Action**

27. DACA is not a lawful immigration status, and Petitioner does not claim otherwise. It is an affirmative, individualized grant of deferred action, renewable for two-year periods, conditioned on background checks and on the requestor not posing a threat to public safety.

28. USCIS records show the following grants to Petitioner (Ex. A at 1; Ex. D at 18):

| Request filed | Approved | Validity period |
|---|---|---|
| July 23, 2015 | Dec. 22, 2015 | Dec. 21, 2015 – Dec. 20, 2017 |
| Sept. 13, 2017 | Oct. 16, 2017 | Oct. 14, 2017 – Oct. 13, 2019 |
| Oct. 24, 2019 | Dec. 20, 2019 | Dec. 19, 2019 – Dec. 18, 2021 |
| Dec. 8, 2021 | Feb. 8, 2022 | Feb. 4, 2022 – Feb. 3, 2024 |
| Jan. 19, 2024 | Apr. 30, 2024 | Apr. 29, 2024 – Apr. 28, 2026 |

29. The 2019, 2022, and 2024 approvals each followed the July 25, 2019 arrest described in ¶ 38, which appeared in the fingerprint-based FBI and California records associated with Petitioner, and the ICE detainer lodged on July

26, 2019 because of that arrest. (Ex. D at 10, 16.) Each time, with that information in its files, DHS granted deferred action again.

30. On November 25, 2025, Petitioner filed his renewal request (Form I-821D, receipt IOE9448486887) and application for employment authorization (Form I-765, receipt IOE9448486888). (Ex. A at 5–6.) USCIS reused his prior biometrics. (*Id.* at 6.) His deferred action expired on April 28, 2026, while the request remained pending.

31. USCIS records reflect that on July 15, 2026, twelve days after ICE detained Petitioner, both the renewal request and the employment application were "Closed – Denied." (Ex. A at 1.) The denial notice is not in Petitioner's possession; DHS's bond submission relied on the same database printout. (Ex. D at 2, 18.) The record does not disclose the ground for denial. To Petitioner's knowledge, he received no request for evidence or notice of intent to deny before he was detained. His DACA requests were prepared with a non-attorney preparer, and prior counsel has not yet produced his file.

32. ICE's Form I-213, prepared on July 3, 2026, states that Petitioner "currently has no applications pending before USCIS" and "has no known immigration benefits or protections." (Ex. D at 11.) The first statement was untrue that day: his timely renewal was pending. The I-213 also lists the expiration dates

of three DACA grants as the dates USCIS "approved" them. (Ex. D at 10; *compare* Ex. A at 1.)

**C. The July 2 Citation and the July 3 ICE Arrest**

33. On the evening of July 2, 2026, LAPD officers stopped Petitioner at a DUI checkpoint near Melrose and Oxford Avenues in Los Angeles and cited him for a misdemeanor violation of California Vehicle Code § 23152(f), driving under the influence of a drug. (Ex. D at 33.) The citation notes that a blood sample was drawn; no result appears in the record. (*Id.*) California records describe the event as "arrest/detained/cited." (Ex. D at 16–17.) The citation directed Petitioner to appear at the Metropolitan Courthouse in Los Angeles on July 31, 2026. (Ex. D at 33.) He was in ICE custody on that date. To Petitioner's knowledge, no criminal complaint has been filed, and he has not been convicted.

34. According to ICE's own narrative, on July 3, 2026, ICE's Pacific Enforcement Response Center generated a lead identifying Petitioner as "currently in custody," and lodged a Form I-247G request for advance notification of his release. (Ex. D at 8, 10.) At about 7:00 a.m. the Los Angeles Fugitive Operations Field Team "conducted an operation attempt to locate and arrest" Petitioner at the LAPD Metropolitan Detention Center; officers arrived at about 7:30 a.m. and waited. (Ex. D at 8–9.) At about 10:55 a.m., they saw Petitioner leave the building,

identified him from "a picture of a prior arrest and information provided on a Field Operations Worksheet," approached him in a public area, questioned him, and took him into custody "without incident." (Ex. D at 9.)

35. Respondents have not produced any administrative warrant for Petitioner's arrest. The I-213 narrative does not mention one. It states that officers acted "pursuant under" INA § 212(a)(6)(A)(i), the inadmissibility ground, and records only that Petitioner admitted Mexican citizenship and lacked documents. (Ex. D at 8–9.) It contains no statement that any officer believed Petitioner was likely to escape before a warrant could be obtained, and no fact suggesting it. Its "Disposition" section records only that "ERO Los Angeles issued" Petitioner a Notice to Appear. (Ex. D at 11.) Petitioner discloses two facts that point the other way. The form's receipt box, completed by the examining officer at processing, reads "Warrant of Arrest/Notice to Appear." (Ex. D at 7.) And after Petitioner was taken to the field office for processing, officers gave him a document they described as an arrest order, of which he has no copy. No warrant was shown or served when he was arrested. Petitioner therefore alleges, on information and belief, that no warrant had issued when he was arrested at about 10:55 a.m. At a minimum, Respondents have produced neither a pre-arrest warrant nor any contemporaneous likelihood-of-escape determination (¶ 128).

36. Nothing in the I-213 reflects any individualized assessment of danger or flight risk before Petitioner was taken into custody, any initial custody determination, or any opportunity for him to be heard. Respondents have produced no Form I-286 or other custody determination, and never initiated a custody review. The only custody determination Petitioner has received resulted from his own request for redetermination. (Ex. E at 4–7.)

37. DHS issued a Notice to Appear the same day. (Ex. B at 1.) Petitioner has been detained since July 3, 2026, and remains in ICE custody at the Adelanto ICE Processing Center. (Ex. G.)

**D. Criminal-History Allegations**

38. Petitioner has no criminal conviction. (Ex. D at 13–17.) On July 25, 2019, Los Angeles County Sheriff's deputies responded to a report of shots fired in an alley in Carson. According to the Sheriff's report, Petitioner's cousin, Jose Luis Soto, became angry after a dispute with a coworker, retrieved a handgun, and fired about five rounds into the air; Soto admitted this after a Miranda advisement. Petitioner, also after a Miranda advisement, stated that he had tried to calm Soto, took the gun from Soto's hand, and put it in a backpack in his own car, where deputies found it. The gun's serial number had been obliterated; Soto said he

bought it from a transient. Petitioner was arrested for carrying a concealed firearm in a vehicle, Cal. Penal Code § 25400(a). (Ex. D at 27–31.)

39. The Deputy District Attorney rejected the case against Petitioner on August 21, 2019, and filed a felony complaint against Soto. (Ex. D at 23–24.) California's record shows the disposition as release with the arrest deemed a detention only for lack of sufficient evidence, and arrest-record relief under Cal. Penal Code § 851.93. (Ex. D at 16.) Petitioner does not contend that the events of July 25, 2019 did not occur. On the government's own report, he did not possess or fire the gun before the shots, and he took it from the person who did.

40. The only other entry in Petitioner's record is the July 2, 2026 misdemeanor citation (¶ 33). The record contains no allegation of an accident or injury and no blood-test result. Prior counsel's bond motion states that Petitioner denied drinking but acknowledged smoking marijuana earlier that day. (Ex. E at 5.)

**E. Custody Proceedings and the October 5 Order**

41. Petitioner is detained under 8 U.S.C. § 1226(a). People present without admission and apprehended in the interior are subject to § 1226, not § 1225(b)(2)(A), and "[a] § 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165,

1167 (9th Cir. 2026) (citations omitted) (as quoted in *Garcia Del Solar v. Mullin*, No. 5:26-cv-05360-AS, Dkt. 12 at 4–5 (C.D. Cal. filed Oct. 8, 2026)). The Immigration Judge adjudicated Petitioner's request on that basis. (Ex. C at 1.)

42. Through prior counsel, Petitioner submitted evidence of residence since early childhood, school enrollment and graduation, four years of tax returns, employment, letters from employers, family, and community members, birth certificates of his U.S.-citizen siblings, his father's U-visa Bona Fide Determination, and the Sheriff's case-closure and incident records for 2019. (Ex. E; Ex. D at 22–32.) On October 5, 2026, two U.S. citizens, Angela Sucely Rodriguez and J. Octavio Rodriguez, submitted a signed declaration, affirming its contents as true and correct, offering to sponsor Petitioner, to provide transportation and reminders for every hearing and appointment, and to provide financial and practical support, with Petitioner living with his mother in Carson. (Ex. F at 4–7.)

43. DHS submitted the I-213, FBI and California criminal-history records, the USCIS benefits history reflecting the July 15 denial, the text of Penal Code § 25400, the 2019 incident report, and the LAPD citation. (Ex. D.)

44. On October 5, 2026, the Immigration Judge denied release on a pre-printed form, checking "Denied, because" and adding: "the respondent failed

to meet his burden to establish that he is not a danger to the community and a flight risk." The order continues: "Should the respondent appeal the Court's custody redetermination decision to the Board of Immigration Appeals, this Court will provide a more fulsome memorandum to facilitate review of the appeal." (Ex. C at 1.) The order cites no evidence, makes no finding on any specific risk, does not distinguish danger from flight, and does not mention the sponsors, the government's own DACA approvals, the prosecutor's rejection of the 2019 case, or any alternative to detention.

45. The record before the Immigration Judge therefore included, at a minimum: (a) the I-213 and FBI and California criminal-history records (Ex. D at 7–17); (b) the 2019 Sheriff's records, including the prosecutor's rejection of the case and Petitioner's statement that he took the gun from the person who fired it (Ex. D at 23–31); (c) the USCIS benefits history showing five grants of deferred action (Ex. D at 18); (d) the LAPD citation (Ex. D at 33); (e) Petitioner's motion and supporting documents showing two decades of residence, schooling, employment, tax filings, and U.S.-citizen family (Ex. E); and (f) the sponsor declaration (Ex. F). The October 5 order mentions none of it.

46. Petitioner's prior counsel did not obtain the recording of the October 5 hearing. Petitioner has not yet received the recording. Any reasons the Immigration

Judge may have stated orally do not appear in the written order. Petitioner asks the Court to order Respondents to file the recording or a transcript with their return, as the court did in *Santiago Morales v. Mullin*, 2026 WL 2678274, at *2 (C.D. Cal. Sept. 11, 2026) (¶ 128). The recording bears on Count I, which concerns the adequacy of the October 5 decision. It does not bear on Counts II through IV, which turn on what happened on July 3, 2026 and on records already before the Court.

47. Both parties reserved appeal; any appeal is due November 5, 2026. (Ex. C at 2.) On October 15, 2026, Petitioner, through counsel, filed a Notice of Appeal (Form EOIR-26) from the October 5 custody decision with the Board of Immigration Appeals. (Ex. I). EOIR's automated case information, printed later that day, did not yet reflect the appeal (Ex. H), and the Board has not yet issued a receipt notice or briefing schedule. The appeal is thus filed and pending but not yet docketed.

## VI. LEGAL ARGUMENT

### A. Scope of Review Under *Martinez v. Clark*

48. *Martinez* holds that, after *Wilkinson v. Garland*, 601 U.S. 209 (2024), the determination whether a noncitizen is dangerous for detention purposes "is a mixed question of law and fact and is reviewable as a 'question of law.'" 124 F.4th

at 779. Review is for abuse of discretion: the court “cannot reweigh evidence” but determines “whether the BIA applied the correct legal standard.” *Id.* at 784–85 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). The same review applies to flight-risk findings. *Santiago Morales*, 2026 WL 2678274, at *5; *Villa v. Mullin*, 834 F. Supp. 3d 957, 961, 963 (C.D. Cal. 2026). Petitioner invokes only that review.

49. *Martinez* arose under 8 U.S.C. § 1226(c), where a district court had ordered a due process bond hearing at which the government bore a clear-and-convincing burden. *Martinez* found the danger determination reviewable partly because that hearing “did not leave room for an added layer of agency discretion; if the BIA found that Martinez was not dangerous, it would have had to release him.” 124 F.4th at 784. Respondents may argue that § 1226(a) differs because it provides that the government “may release” a detainee.

50. That argument fails. The Ninth Circuit has described § 1226(a) in the same terms: a § 1226(a) detainee “will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community.” *Rodriguez Vazquez*, 183 F.4th at 1167 (citations omitted). The danger and flight-risk determination is therefore the dispositive legal standard in a § 1226(a) hearing, just as it was in *Martinez*.

51. Courts in this District consistently apply *Martinez* abuse-of-discretion review to § 1226(a) bond denials. *Garcia Del Solar*, Dkt. 12 at 5 n.4; *Santiago Morales*, 2026 WL 2678274, at *3, *5; *Villa*, 834 F. Supp. 3d at 961, 963. And even apart from the mixed-question analysis, § 1226(e) does not bar constitutional claims, *Martinez*, 124 F.4th at 779, 781–82, which Part VI.B also presents.

52. *Martinez* also defines what abuse-of-discretion review requires. A reviewing court takes the agency at its word only "in the absence of any red flags"; it does not credit a "catchall phrase" where the agency misstates the record or fails "to mention highly probative or potentially dispositive evidence." 124 F.4th at 785 (quoting *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011)). An adequate decision is one that "discussed all evidence that was highly probative or potentially dispositive." *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1008 (9th Cir. 2025). *Martinez* itself upheld a BIA decision that stated the burden of proof, reviewed the convictions, credited the rehabilitation evidence, and explained why the evidence of danger outweighed it. 124 F.4th at 785–86. The October 5 order did none of those things.

**B. The October 5 Custody Decision Applied No Discernible Legal Standard**

53. Civil immigration detention must bear a reasonable relation to its purposes of securing appearance and protecting the community. *Zadvydas*, 533

U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The § 1226(a) process satisfies due process because it supplies an individualized determination by a neutral decisionmaker, with administrative and judicial review. *Rodriguez Diaz*, 53 F.4th at 1202. This argument does not challenge that framework; it challenges a decision that did not supply what the framework presupposes.

54. Petitioner recognizes that *Martinez* held due process did not require consideration of alternatives to detention once the agency had validly found the detainee dangerous. 124 F.4th at 786. That holding rested on *Singh*'s "greater procedural protections"—a government burden by clear and convincing evidence and a contemporaneous record—and on a reasoned BIA decision finding danger from repeated drug-trafficking convictions. *Id.* at 785–86. Petitioner bore the burden himself, and the October 5 order states no finding. *Martinez*'s alternatives holding presupposes a valid danger determination. As to flight risk, due process requires consideration of conditions short of detention. *Hernandez v. Sessions*, 872 F.3d at 990–91; *Santiago Morales*, 2026 WL 2678274, at *7.

55. An Immigration Judge abuses his discretion when the decision is "arbitrary, irrational, or contrary to law," or "when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying

relief." *Santiago Morales*, 2026 WL 2678274, at *5 (quoting *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019), and *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012)). An agency also abuses its discretion "when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [the decision]." *Id.* (quoting *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006)).

56. The October 5 order fails each requirement. It states no reason; it does not identify which considerations supported danger and which supported flight; and it does not mention any of the evidence that was highly probative on both questions:

(a) DHS's own decisions in 2019, 2022, and 2024 to grant Petitioner deferred action again, after its background checks disclosed the 2019 arrest and after ICE had lodged a detainer on that arrest (¶ 29);

(b) the District Attorney's rejection of the 2019 case and California's treatment of the arrest as a detention only (¶ 39);

(c) the government's own report that Petitioner disarmed the person who fired the gun (¶ 38);

(d) the absence of any conviction, and the misdemeanor, unadjudicated character of the July 2026 citation (¶¶ 33, 40);

(e)21 years of residence, a fixed address, U.S.-citizen siblings, employment, and tax filings (¶¶ 22–25); and

(f)the signed sponsorship declaration of two U.S. citizens (¶ 42).

57. *Santiago Morales* is closely on point. There, the same Immigration Judge denied bond to a § 1226(a) detainee with decades of residence and U.S.-citizen children, placing the burden on him by a preponderance of the evidence. 2026 WL 2678274, at *1, *4 & n.2. After ordering the government to file the hearing transcript, the court held that the Immigration Judge abused his discretion: he relied on generalized considerations, did not acknowledge or discuss any of the petitioner's fourteen exhibits, and did not engage in "any meaningful analysis of potential alternatives to detention." *Id.* at *2, *5–7 (quoting *Heboud v. Blanche*, 2026 WL 2494985, at *6 (C.D. Cal. Aug. 24, 2026)). The court ordered release within 24 hours on reasonable noncustodial conditions, without reaching the petitioner's separate warrantless-arrest claims. *Id.* at *8. Here, the written order addresses none of Petitioner's evidence at all (¶¶ 42–44).

58. The most pertinent consideration in assessing danger is "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Martinez*, 124 F.4th at 783 (quoting *Singh*, 638 F.3d at 1206). Petitioner has no conviction; the firearm matter

was never charged and is seven years old; and the 2026 matter is a misdemeanor citation on which, to his knowledge, no complaint has been filed. A decision that addresses none of those facts gives no indication that the correct standard was applied.

59. Because the order is silent, this is not a case in which the Court could "take the BIA at its word." *Martinez*, 124 F.4th at 785. There are no words to take. The failure to mention highly probative evidence is precisely the "red flag" that withdraws deference. *Id.*; *Gonzalez-Juarez*, 137 F.4th at 1008.

60. The order also fails the Board of Immigration Appeals' own requirements. An Immigration Judge must decide danger first: "Only if an alien demonstrates that he does not pose a danger to the community should an Immigration Judge continue to a determination regarding the extent of flight risk posed by the alien." *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). And "[a] precise finding whether the respondent has demonstrated that he would not pose a danger to property or persons is required." *Id.* In *Urena*, the Board remanded because an Immigration Judge's finding that the respondent presented a "potential" danger was too imprecise to show which determination had been made. *Id.* at 141–42. The October 5 order is less precise still. It states in a single conjunctive clause that Petitioner failed to establish "that he is not a danger to the community

and a flight risk," without saying whether danger was found, whether flight risk was ever reached, or on what evidence. A decision that does not follow the agency's own binding precedent on the structure of the inquiry has not applied the correct legal standard.

61. Petitioner acknowledges one difference. In *Santiago Morales* the government did not argue danger, and the denial rested on flight risk alone. *Id.* at *4. Here DHS submitted the 2019 records and the July 2026 citation, and the order recites danger as well as flight risk. But the order does not say whether danger was actually found, and *Urena* requires that finding to be made first and precisely (¶ 60). *Martinez*'s holding that alternatives need not be considered once a detainee is validly found dangerous therefore has nothing to operate on. As to flight risk, the failure to consider alternatives is itself an abuse of discretion. *Santiago Morales*, 2026 WL 2678274, at *7; *Alvarez Felix v. U.S. Dep't of Just.*, No. 2:26-cv-03304-HDV-AYP, 2026 WL 1719418, at *2 (C.D. Cal. June 10, 2026) (consideration of alternatives is "a necessary component of the due process analysis in the context of bond determinations") (as quoted in *Santiago Morales*, 2026 WL 2678274, at *7).

62. The order's offer of a fuller memorandum if Petitioner appeals does not cure the defect. Petitioner recognizes that such memoranda are a regular part of the

appeal process (Ex. C at 1). But until one issues, Petitioner is detained on a decision that states no reasons, which neither he nor any reviewing body can test. Any memorandum written after this challenge must be read for the reasons actually relied on at the October 5 hearing, not as a substitute for them, and Petitioner will address it promptly when it issues.

63. To the extent the denial rested on Petitioner's entry without inspection, his lack of lawful status, the denial of his DACA renewal, or the asserted weakness of his application for relief, it relied on considerations common to nearly every § 1226(a) detainee. Such reasoning "effectively condemns all such noncitizens to mandatory detention, undermining the intent of the Ninth Circuit's ruling" in *Rodriguez Vazquez*. *Garcia Del Solar*, Dkt. 12 at 11; *see id.* at 8–11; *Santiago Morales*, 2026 WL 2678274, at *6–7 (same Immigration Judge); *Villa*, 834 F. Supp. 3d at 962.

64. To the extent the denial rested on the 2019 arrest, the Board permits an Immigration Judge to consider "arrests that did not ultimately result in conviction," *Urena*, 25 I&N Dec. at 140–41 (citing *Matter of Guerra*, 24 I&N Dec. 37, 41 (BIA 2006)), but requires consideration of "not only the nature of a criminal offense but also the specific circumstances surrounding the alien's conduct," *Matter of Siniauskas*, 27 I&N Dec. 207, 208 (BIA 2018). The specific circumstances here are

an uncharged arrest seven years ago in which, on the government's own account, Petitioner took a weapon away from the person who fired it, followed by three DHS determinations that he met DACA's public-safety criteria. Treating that record as proof of present danger without addressing those circumstances is a failure to apply the correct standard, not a weighing of evidence.

65. To the extent the denial rested on the July 2026 citation, it treated an unadjudicated misdemeanor allegation, without any test result in the record, as establishing present danger, without addressing the specific circumstances of the conduct, *Siniauskas*, 27 I&N Dec. at 208, or whether conditions directed at that specific risk—no driving, testing, and treatment—would suffice. *See* Part VI.C.

66. Petitioner's continued detention under the October 5 order violates the Due Process Clause and 8 U.S.C. § 1226(a).

**C. The July 2 Citation Does Not Justify Detention Without Process or Limit the Remedy**

67. The July 2, 2026 citation does not justify detention without process, and it does not limit the remedy. A citation is an accusation, not an adjudication. To Petitioner's knowledge no complaint has been filed, the record contains no test result, and the alleged offense is not one for which Congress has mandated detention. *See* 8 U.S.C. § 1226(c)(1). Whatever weight the allegation might carry,

weighing it is the task of a neutral decisionmaker applying the correct standard, and that never happened here (Part VI.B).

68. Petitioner does not ask the Court to ignore the July 2 allegation. A custody decisionmaker may consider reliable evidence of conduct that has not resulted in a conviction. *Matter of Urena*, 25 I&N Dec. 140, 140–41 (BIA 2009). The relevant evidence here is limited: a checkpoint citation for driving under the influence of a drug, a notation that blood was drawn with no result in the record, Petitioner's acknowledgment that he had smoked marijuana earlier that day, and no accident, injury, or prior impaired-driving history (¶¶ 33, 40). That evidence describes a specific and manageable risk—impaired driving—and the release plan in ¶ 124 addresses it directly. Petitioner will not drive; his sponsors have committed to transport him to every hearing and appointment (Ex. F at 4–7); he will abstain from cannabis and other intoxicants and submit to testing; and he will complete a licensed substance-use assessment and any recommended treatment. Detention is not reasonably related to a risk that conditions this specific can address. *See Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017). Release will also allow Petitioner to appear and resolve any criminal matter arising from the citation, which his ICE detention prevented on July 31, 2026 (¶ 33).

69. Respondents will rely on *Matter of Siniauskas*, in which the Board held that "[d]riving under the influence is a significant adverse consideration in bond proceedings." 27 I&N Dec. at 209. Petitioner does not dispute that a DUI allegation is relevant to danger. But *Siniauskas* involved three DUI convictions and a fourth, pending arrest, with two of the convictions and the new charge involving accidents, *id.* at 208, and the Board itself distinguished "a case involving a single conviction for driving under the influence from 10 years ago," *id.* at 210. Petitioner has no conviction of any kind; the record shows a single citation on which, to his knowledge, no complaint has been filed, and no accident or injury. *Siniauskas* also requires the decisionmaker to examine "the specific circumstances surrounding the alien's conduct," *id.* at 208, which the October 5 order did not do. Petitioner acknowledges that *Siniauskas* treats family and community ties as generally bearing on flight risk rather than danger, *id.* at 209–10; that is why the release conditions he proposes are directed at the specific risk the citation raises—no driving, testing, and a substance-use assessment with any recommended treatment (¶ 124)—rather than at his ties alone. Finally, *Siniauskas* concerns the weight of a DUI within a custody determination. It says nothing about whether ICE could arrest Petitioner without a warrant or detain him without an initial custody determination (Parts VI.E–G).

70. Courts have ordered immediate release in these circumstances. *See Pedro v. Warden, Cal. City Immigration Processing Ctr.*, No. 1:26-cv-04268-DAD-SCR, 2026 WL 1694702 (E.D. Cal. June 11, 2026) (pending driving-under-the-influence charge); *Palencia-Vargas v. Rios*, No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *1–2, *4 (C.D. Cal. Aug. 20, 2026) (local arrest on which no charges were filed); *Vallejo v. Warden*, No. 1:26-cv-05320-DAD-SCR, 2026 WL 2391062, at *2 (E.D. Cal. Aug. 14, 2026) (findings and recommendations) (record of arrests without charges or with dismissed charges presented "no danger justification for limiting the remedy to a post-deprivation remedy"); *Jesus Emiliano P.Y. v. Mullin*, No. 1:26-cv-08095-TLN-CKD, ECF No. 8 at 1–3 (E.D. Cal. Oct. 8, 2026) (re-detention following a traffic stop); *De La Rosa Gallegos*, 2026 WL 3027134, at *1, *5, *7 (2024 DUI conviction and pending domestic-violence charge); *Salazar-Sorto v. Mullin*, No. 5:26-cv-04690-KES, 2026 WL 2621203, at *1–3, *6 (C.D. Cal. Sept. 4, 2026) (former DACA recipient with a 2018 domestic-violence conviction, released after two immigration-court bond denials where the government did not defend the denials on the merits).

71. Respondents may invoke the rule that, where the government shows a non-pretextual change in circumstances, the remedy for a missing pre-deprivation

hearing is a post-deprivation hearing. *Hidalgo v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-03511-DC-JDP, 2026 WL 1707795, at *1 (E.D. Cal. June 12, 2026). *Hidalgo* itself ordered release, because nothing showed "the necessity of quick action" that would have prevented a pre-deprivation hearing once the petitioner left local custody. *Id.*. The same is true here. ICE learned of the citation through a fingerprint notification, lodged an advance-notification request, and waited more than three hours outside the jail (¶ 34). A deprivation planned in advance requires process in advance. *Zinermon v. Burch*, 494 U.S. 113, 132, 136–39 (1990). And even under *Hidalgo*, the post-deprivation hearing must be adequate; Petitioner's placed the burden on him and produced no reasons (Part VI.B).

**D. Neither the October 5 Order Nor *Bilokumsky* Supplies an Independent Lawful Basis for Detention**

72. Respondents will likely rely on *Jacinto Chacon v. Mullin*, 2026 WL 2127177 (C.D. Cal. July 21, 2026). There, a lawful permanent resident with multiple convictions was taken into ICE custody on release from county jail, received a *Rodriguez* hearing at which the government established danger and flight risk by clear and convincing evidence, and then let his BIA appeal lapse after it was rejected as procedurally deficient. *Id.* at *1–2. The court held that any defect

in the original re-detention "has been mooted by the subsequent determination of an immigration judge that he should be held in custody," *id.* at *3; that, under *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923), a defective arrest did not warrant release, *id.*; and that the bond decision had to be exhausted, *id.* at *4–6.

73. Petitioner acknowledges *Jacinto Chacon* as contrary persuasive authority from this District. It does not control here, for six reasons.

74. *First, no "sufficient ground" for detention independent of the unlawful arrest has been shown. Bilokumsky* withholds discharge for defects in the arrest only "if sufficient ground for his detention by the government is shown." *Jacinto Chacon*, 2026 WL 2127177, at *3 (quoting *Bilokumsky*, 263 U.S. at 158). Here there was no warrant and no initial custody determination (Parts VI.E–F), and the only later decision states no reasons (Part VI.B). The October 5 hearing also applied a § 1226(a) framework that presupposes custody began lawfully, on a warrant followed by an initial custody determination. *See Rodriguez Diaz*, 53 F.4th at 1196–97, 1209–10.

75. *Second, the October 5 order is challenged, not unchallenged. Jacinto Chacon*'s mootness holding rests on authority that habeas relief is unavailable when a later decision supplies "a subsequent, unchallenged basis for detention."

2026 WL 2127177, at *3 (quoting *Thiravong v. Scott*, 2026 WL 1382356, at *2 (W.D. Wash. May 18, 2026)). Petitioner challenges the October 5 order directly (Part VI.B; Count I).

76. *Third, Petitioner has timely appealed. Jacinto Chacon* faulted the petitioner for failing "to execute a procedurally sound appeal." *Id.* at *4. Petitioner appealed on October 15, 2026 (¶ 47). In *Garcia Del Solar*, where a BIA appeal had been filed, the court excused further exhaustion and ordered release after finding the IJ decision legally deficient. Dkt. 12 at 4 & n.4, 12–13.

77. *Fourth, the later hearing was different in kind.* The *Jacinto Chacon* hearing was one at which "the government established by clear and convincing evidence that Petitioner is a flight risk and a danger." 2026 WL 2127177, at *2. That is the protection courts require before the government may re-detain a person whose earlier seizure violated due process. *Villa Cambron*, 2026 WL 2584950, at *7; *Bueso Flores*, 2026 WL 2678329, at *5; *Hernandez*, 2026 WL 2099232, at *1. Petitioner's hearing placed the burden on him and produced no findings. A hearing of that kind cannot cure a pre-deprivation violation; otherwise "the government could always wait until a habeas petition is filed and then offer to hold a hearing." *Villa Cambron*, 2026 WL 2584950, at *6; *see Bueso Flores*, 2026 WL 2678329, at *4 ("a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention

when the underlying arrest ... and re-detention were in violation of [the] [p]etitioner's due process rights" (quoting *Reyes Servin v. Semaia*, 2026 WL 1670852, at *7 (C.D. Cal. June 4, 2026))). Courts in this District "have ordered release even where a belated bond hearing has taken place." *De La Rosa Gallegos*, 2026 WL 3027134, at *6 (quoting *Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D. Cal. June 12, 2026)); *see id.* (collecting cases holding that post-deprivation process cannot cure the absence of required pre-deprivation process).

78. *Fifth, the liberty interest is different.* The *Jacinto Chacon* petitioner was arrested on completion of criminal proceedings, with a history of convictions, and asserted no government-conferred deferred action. 2026 WL 2127177, at *1 & n.2. Petitioner was seized after eleven years of affirmative grants of deferred action, while a timely renewal was pending, by officers relying on a record that misstated that very fact (¶¶ 28–32).

79. *Sixth, a later bond denial does not supply the missing pre-arrest determination.* In *Ramirez Perez*, an Immigration Judge denied bond after finding the petitioner a flight risk and a danger, yet the court recommended immediate release because the arrest was made without a warrant or any pre-arrest escape determination. 2026 WL 2123306, at *2, *4. Flight risk assessed months later, with the burden on the detainee, and likelihood of escape assessed by officers before an

arrest are different inquiries. The later finding cannot stand in for the officers' missing one.

80. *Jacinto Chacon*'s reliance on *Bilokumsky* is also disputed within this District. *Bilokumsky* concerned a challenge to a deportation order, not the lawfulness of detention pending proceedings, and "[a] lack of statutory authority for [a] warrantless arrest renders that detention illegal and justifies release from custody." *Villa Cambron*, 2026 WL 2584950, at *4 n.2; *Perdomo Rivera*, 2026 WL 2276935, at *3 n.1. Nor does *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), apply: Petitioner seeks neither suppression nor termination of his removal proceedings, only release from custody resting on an unlawful arrest. *See Abdirahman A. v. Blanche*, 2026 WL 2824339, at *2 (D. Minn. Sept. 21, 2026).

81. Even if the Court concluded that the October 5 order forecloses release on Counts II–IV alone, Count I independently establishes that Petitioner's present custody is unlawful, and Counts II–IV independently support declaratory relief and protection against re-detention without prior process.

**E. ICE Arrested Petitioner Without Any Produced Pre-Arrest Warrant or Documented Likelihood-of-Escape Determination**

82. "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed." 8 U.S.C. §

1226(a). "If no federal warrant has been issued, [federal immigration] officers have more limited authority." *Arizona v. United States*, 567 U.S. 387, 407–08 (2012) (as quoted in *Villa Cambron v. Johnson*, 2026 WL 2584950, at *3 (C.D. Cal. Sept. 1, 2026)). An officer may arrest without a warrant only if he "has reason to believe" the person is unlawfully present "and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). "Reason to believe" means probable cause. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). "[A] warrantless arrest requires an individualized assessment of the person's flight risk." *Villa Cambron*, 2026 WL 2584950, at *3 (quoting *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025)).

83. The two requirements are independent. Treating unlawful presence as proof of likely escape "would render the language regarding the likelihood of escape determination superfluous." *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *19 (C.D. Cal. Sept. 2, 2026); *see Diaz Escalante v. LaRose*, 2026 WL 2364792, at *4 (S.D. Cal. Aug. 14, 2026).

The determination must precede the arrest. *Ramirez Perez v. Chestnut*, 2026 WL 2123306, at *4 (E.D. Cal. July 22, 2026) (findings and recommendations).

84. ICE's own policy requires officers to document in the I-213 narrative "all factors considered in determining that the alien was likely to escape before a warrant could be obtained." *Vasquez Perdomo*, 2026 WL 2751388, at *28 (quoting Memorandum of Todd M. Lyons, Re: Civil Immigration Arrest Authority, at 5 (Jan. 28, 2026)). The Lyons Memo issued more than five months before Petitioner's arrest.

85. Petitioner's I-213 records no such factor. It records a planned operation: a lead generated while Petitioner was in LAPD custody, an advance-notification request, a team on site from about 7:30 a.m., and identification from a prior-arrest photo and a Field Operations Worksheet (¶ 34). The officers knew exactly where Petitioner was and when he would leave. Nothing in that record suggests he was likely to escape before a warrant could be obtained; the record shows the opposite. ICE had hours to obtain a warrant and recorded no reason it could not.

86. Petitioner is a member of the Warrantless Arrest Class certified in *Vasquez Perdomo*: "[a]ll persons, since June 6, 2025, who have been arrested or will be arrested in this District for alleged immigration violations without a warrant and without a pre-arrest, individualized assessment of probable cause that the

person poses a likelihood of escape." *Vasquez Perdomo v. Mullin*, 2026 WL 2752137, at *24 (C.D. Cal. Sept. 2, 2026). He was arrested in Los Angeles on July 3, 2026; Respondents have produced no warrant; and the I-213 records no escape assessment. The class action seeks prospective, district-wide relief; this petition seeks Petitioner's release from present custody and is not duplicative.

87. The I-213's processing entry "Warrant of Arrest/Notice to Appear" does not show a pre-arrest warrant. Petitioner's account is consistent with a post-arrest document: no warrant was shown at the arrest, and the only paper he received came at the field office (¶ 35). A Form I-200 generated during post-arrest processing cannot retroactively authorize a warrantless arrest, and compliance with the post-arrest procedures of 8 C.F.R. § 287.3 "says nothing about whether the preceding arrest itself complied with Section 1357(a)(2)." *Diaz Escalante*, 2026 WL 2364792, at *4; *see Sanchez Marquez v. Warden, Desert View Facility*, No. 5:26-cv-05368-MBK, 2026 WL 2948874, at *6 n.1 (C.D. Cal. Oct. 1, 2026).

88. Courts in this District have ordered release on comparable records. *Sanchez Marquez*, 2026 WL 2948874, at *1, *6–7 (warrantless arrest with no risk-of-escape analysis); *Valtierra Moreno v. Mullin*, No. 5:26-cv-04291-MAR, 2026 WL 2844961, at *3 (C.D. Cal. Sept. 22, 2026) (I-213 did "not indicate that Respondents had a warrant ... or that there was reason to believe that Petitioner was

likely to escape"); *Villa Cambron*, 2026 WL 2584950, at *3–4; *Perdomo Rivera v. Mullin*, 2026 WL 2276935, at *2–3 (C.D. Cal. Aug. 6, 2026); *Tellez-Serrano v. Semaia*, 2026 WL 2574829, at *4–6 (C.D. Cal. Aug. 31, 2026).

89. On this record, Respondents have not shown statutory authority for the arrest. Unless they produce a warrant issued before 10:55 a.m. on July 3, 2026, the arrest was a warrantless arrest made without the determination § 1357(a)(2) requires, and Petitioner is in custody in violation of the laws of the United States. 28 U.S.C. § 2241(c)(3).

90. Petitioner recognizes that a defective arrest is distinct from the lawfulness of continued detention, and that Respondents will argue the October 5 decision independently authorizes custody. That is why this petition leads with Count I. The arrest claim does not stand alone: the same record shows no produced warrant, no escape determination, no initial custody determination, and a later custody decision that states no reasons. Together they leave Respondents without a lawful basis for Petitioner's present custody. *See* Part VI.D.

**F. No Initial Custody Determination Preceded Petitioner's Detention Under § 1226(a)**

91. When a noncitizen is arrested without a warrant, DHS must determine within 48 hours whether he will be continued in custody or released, and whether a

notice to appear and warrant of arrest will be issued. 8 C.F.R. § 287.3(d). The initial custody determination is made by an authorized officer under 8 C.F.R. § 236.1(c)(8), and an Immigration Judge's custody redetermination reviews it. 8 C.F.R. § 1236.1(d)(1). DHS records and serves that determination on Form I-286, Notice of Custody Determination. The § 1226(a) scheme thus provides "extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination." *Santiago Morales*, 2026 WL 2678274, at *3–4 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022)). The initial custody review "ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis." *Sanchez Marquez*, 2026 WL 2948874, at *5.

92. Petitioner received none of that. Respondents have produced no Form I-200, no Form I-286, and no record of an initial custody determination; the I-213 identifies no detention authority; and DHS never initiated a custody review (¶¶ 35–36). The only custody hearing he has received resulted from his own request; DHS made no custody determination of its own.

93. This claim does not depend on the timing of any warrant. Even if Respondents produce a pre-arrest warrant, they have produced no Form I-286 or other initial custody determination, and the I-213 identifies none (¶¶ 35–36).

94. Custody that began this way was “unlawful from its inception,” *Tellez-Serrano*, 2026 WL 2574829, at *4, and that “unlawfulness cannot be cured through belated compliance with statutory requirements,” *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026). A later bond hearing is “no substitute” for the initial determination that would have established a lawful basis for detention. *Sanchez Marquez*, 2026 WL 2948874, at *6.

**G. Respondents Deprived Petitioner of a Protected Liberty Interest Without Pre-Deprivation Process**

95. Procedural due process asks whether a protected liberty interest exists and, if so, what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Andres Oswaldo S.O. v. Warden*, 2026 WL 2935753, at *2 (E.D. Cal. Sept. 29, 2026). “Freedom from imprisonment ... lies at the heart of the liberty that [the Due Process] Clause protects.” *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

96. Petitioner is precise about what he claims. He does not claim an unexpired grant of deferred action on July 3, 2026; his last grant expired on April 28, 2026 (¶ 30). Nor does he claim that the regulation requiring notice before termination of a grant, 8 C.F.R. § 236.23(d)(1), applied by its terms. He relies on two things: a timely renewal request that remained pending when he was seized,

and eleven years of individualized grants made with knowledge of the 2019 arrest. Courts have held that expiration of a DACA grant that was never terminated does not extinguish the liberty interest the grants created. *Villa Cambron v. Johnson*, 2026 WL 2584950, at *5 (C.D. Cal. Sept. 1, 2026) (citing *Hernandez v. Warden, Golden State Annex Det. Facility*, 2026 WL 1759597, at *3 (E.D. Cal. June 18, 2026)); *Hernandez v. Warden, Golden State Annex Det. Facility*, 2026 WL 2099232, at *1 (E.D. Cal. July 21, 2026). And even apart from that interest, freedom from physical detention is itself protected liberty, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), so the question is what process was due before the government took it. The DACA history matters to that question because it is the government's own repeated, individualized determination—made with the 2019 arrest in its files—that Petitioner did not pose a threat to public safety. That history raises the private interest at stake and the risk that a seizure made without any individualized assessment was erroneous.

97. When the government affirmatively grants a person liberty, that grant carries an "implicit promise" that it will not be withdrawn without adequate process. *Morrissey*, 408 U.S. at 482; *Andres Oswaldo S.O.*, 2026 WL 2935753, at *2. Courts in this Circuit have recognized that "the government's knowing decision not to detain an individual creates a liberty interest in their continued release."

*Bueso Flores v. Chestnut*, 2026 WL 2678329, at *2 (E.D. Cal. Sept. 11, 2026) (quoting *Anderson v. Chernut*, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026)). That interest can arise even where the government never previously detained the person, *Kharitonova v. Albarran*, 2026 WL 531441, at *6 (N.D. Cal. Feb. 25, 2026), and where the government permitted the person to remain at liberty despite already possessing the information later used to justify detention, *Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, 2026 U.S. Dist. LEXIS 106210 (C.D. Cal. May 13, 2026); *see Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025).

98. DACA is not passive non-enforcement; it "create[s] a program for conferring affirmative relief." *Bueso Flores*, 2026 WL 2678329, at *3 (quoting *Juarez v. Noem*, 2026 WL 799976, at *4, and *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 18 (2020)). Courts have "'overwhelmingly found' that a noncitizen with active deferred action status [under DACA] has a protected liberty interest." *Villa Cambron*, 2026 WL 2584950, at *5 (quoting *Hernandez v. Warden, Golden State Annex Det. Facility*, 2026 WL 1759597, at *2 (E.D. Cal. June 18, 2026)). "Even where a noncitizen's DACA status has expired, their liberty interest does not necessarily expire as well." *Id.*

99. DHS created exactly that interest here, through repeated affirmative acts. It approved Petitioner's deferred action five times, authorized his employment, collected his biometrics, and ran background checks each time. Three of those approvals came after the 2019 arrest appeared in his fingerprint record and after ICE lodged a detainer based on it (¶ 29). The government thus had the 2019 arrest in its files and chose, three times, to leave Petitioner at liberty. The only new fact on July 3, 2026 was a misdemeanor citation.

100. Courts have found a protected interest, and ordered release, on records like this one. In *Villa Cambron*, a 26-year-old who had lived here since age five, whose DACA had expired after he timely sought renewal, and who had a pending arrest under USCIS inquiry, was ordered released. 2026 WL 2584950, at *2–7. In *Hernandez*, the court ordered release on an expired DACA grant despite "multiple law enforcement contacts involving driving-related and/or misdemeanor offenses such as driving under the influence." 2026 WL 2099232, at *1 (E.D. Cal. July 21, 2026). In *Ramirez v. Warden of Golden State Annex Det. Facility*, the court ordered release of a former DACA recipient whose grant had expired in 2021 and who had a DUI conviction and a pending DUI arrest. 2026 WL 1078250, at *1, *3 (E.D. Cal. Apr. 21, 2026). And in *De La Rosa Gallegos*, the court found a protected liberty interest arising from a DACA grant first made in 2014 and ordered

immediate release notwithstanding a 2024 DUI conviction and a pending domestic-violence charge. 2026 WL 3027134, at *1, *4–5, *7. The court reasoned that by granting DACA the government "in effect, already made" an individualized determination not to detain the petitioner, and that "how such criminal history should be weighed is a matter that could have been assessed at a hearing, but was not." *Id.* at *5.

101. Petitioner acknowledges two facts not present in *Villa Cambron*: USCIS denied his renewal on July 15, 2026, and an Immigration Judge later denied bond. The liberty interest is measured at the moment of deprivation—July 3, 2026—when his timely renewal was pending and no denial existed. A denial entered twelve days into detention, on grounds not disclosed in the record and, to Petitioner's knowledge, without any prior request for evidence or notice of intent to deny (¶ 31), cannot retroactively supply the process due before the seizure.

102. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), Petitioner was entitled to notice and a hearing before a neutral decisionmaker before ICE detained him. His private interest is substantial: two decades of residence, family, work, and government-sanctioned presence.

103. The risk of erroneous deprivation was high, as this record shows. ICE acted on an I-213 that told the agency Petitioner had "no applications pending

before USCIS" and "no known immigration benefits or protections" (¶ 32), and it made no individualized assessment of danger or flight (¶ 36). A pre-deprivation hearing would have required the government to identify its evidence and allowed Petitioner to answer it.

104. The government's interest in detaining Petitioner without a hearing was minimal. ICE knew in advance where he would be and when (¶ 34). Custody hearings are routine and inexpensive. *Villa Cambron*, 2026 WL 2584950, at *6; *Bueso Flores*, 2026 WL 2678329, at *3.

105. *Rodriguez Diaz* does not foreclose this claim. It "addressed the adequacy of the burden allocation at a bond hearing for a person already in custody; it did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process." *Bueso Flores*, 2026 WL 2678329, at *3 (quoting *Gagik T. v. Chestnut*, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026)) (emphasis omitted). *Rodriguez Diaz* also expressly preserved as-applied challenges. 53 F.4th at 1213–14.

106. DACA's implementing regulations confirm the expectation of process: USCIS must provide a Notice of Intent to Terminate and an opportunity to respond before terminating a grant of deferred action. 8 C.F.R. § 236.23(d)(1); *Rodriguez Morales v. Warden*, 2026 WL 2365058, at *2 (C.D. Cal. Aug. 14, 2026).

Petitioner's grant expired rather than being terminated, and he does not claim the regulation applied by its terms. But a government that promises notice before ending deferred action cannot plausibly claim an interest in jailing a recipient of eleven years, whose renewal it had not yet decided, without any notice at all.

107. Respondents detained Petitioner without notice, without a hearing, and without any individualized determination, in violation of the Due Process Clause. The October 5 hearing did not cure that violation (Part VI.D).

**H. In the Alternative, Due Process Required Respondents to Bear the Burden of Proof**

108. The allocation of the burden differs by detention context, and Petitioner does not conflate them. In prolonged detention under § 1226(c), the Ninth Circuit required the government to prove danger or flight risk by clear and convincing evidence, *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011), and *Martinez* reviewed a court-ordered hearing of that kind, 124 F.4th at 780, 786. Courts remedying a constitutional violation in the initiation of detention have likewise placed that burden on the government at any re-detention hearing. *Villa Cambron*, 2026 WL 2584950, at *7; *Bueso Flores v. Chestnut*, 2026 WL 2678329, at *5 (E.D. Cal. Sept. 11, 2026); *Hernandez*, 2026 WL 2099232, at *1. In an ordinary initial § 1226(a) hearing, by contrast, *Rodriguez Diaz* upheld the default

allocation of the burden to the detainee. Petitioner's detention has not yet become prolonged, and he does not rely on the prolonged-detention cases.

109. *Rodriguez Diaz* upheld that default allocation for a detainee who received the statute's full protections, which the court described as including "several layers of review of the agency's initial custody determination." 53 F.4th at 1202 (as quoted in *Santiago Morales*, 2026 WL 2678274, at *3–4). The court expressly declined to "foreclose all as-applied challenges to § 1226(a)'s procedures," and rejected the as-applied claim before it because the detainee had not "pointed to any individualized circumstances warranting additional procedures, or any unconstitutional failure of the § 1226(a) procedures in his case." *Id.* at 1213.

110. Petitioner points to both. He was arrested without a warrant or any escape determination; DHS made no initial custody determination and never initiated custody review; he received a custody hearing only because he requested one; and he was seized after eleven years of government-conferred deferred action (¶¶ 28–36). In these circumstances it is improper to require the detainee "to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011) (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)); *see Nola*, 2026 U.S. Dist. LEXIS 106210, at *21–22.

111. As applied to Petitioner, due process required that, at any custody hearing, Respondents bear the burden of proving by clear and convincing evidence that detention is necessary to prevent flight or danger. The October 5 hearing did not. This Count is pleaded in the alternative to immediate release.

**I. Exhaustion Is Not Required**

112. Exhaustion under § 2241 is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d at 988; *Singh*, 638 F.3d at 1203 n.3. It may be excused when administrative remedies are inadequate, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004); *see Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

113. *Counts II, III, IV, and V are not exhaustible.* A custody redetermination asks only whether the noncitizen presents a danger or flight risk; neither the Immigration Judge nor the Board can decide whether ICE's warrantless arrest complied with § 1357(a)(2), whether custody commenced as § 1226(a) requires, or whether the default burden allocation is constitutional as applied. *See Ramirez*, 2026 WL 1078250, at *2–3. Even *Jacinto Chacon* recognized that "the BIA cannot directly review the constitutionality of an immigration judge's determination." 2026 WL 2127177, at *5.

114. *Count I.* Petitioner has appealed the October 5 order to the BIA (¶ 47). He has bypassed nothing. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), faulted a petitioner who sought habeas review before appealing; Petitioner has appealed.

115. Further exhaustion of Count I should be excused. Whether a custody decision applied the correct legal standard requires no BIA expertise, and review here will not encourage deliberate bypass. *Santiago Morales*, 2026 WL 2678274, at *3–4; *Garcia Del Solar*, Dkt. 12 at 5 n.4 (excusing exhaustion although a BIA appeal had been filed, because "Petitioner would be significantly harmed if forced to wait for appellate review, and no appellate record or agency expertise is needed"). A detained respondent "would likely need to wait at least six months in detention for the BIA to issue a decision on his appeal." *Herman v. Dep't of Homeland Sec.*, No. 5:26-cv-01995-MBK, 2026 WL 1723960, at *6 (C.D. Cal. June 12, 2026).

116. Continued detention pending a BIA bond appeal would cause irreparable injury specific to Petitioner. He has been detained since July 3, 2026, away from his mother and three U.S.-citizen siblings in Carson (¶ 25). His employer of three seasons describes him as a reliable worker who supports his family (Ex. E at 43). His detention has already prevented him from appearing on

the July 31, 2026 date set by his citation, leaving that matter unresolved (¶ 33). Conclusory assertions do not suffice, *Jacinto Chacon v. Mullin*, 2026 WL 2127177, at *5 (C.D. Cal. July 21, 2026), and Petitioner does not rely on them. *See Villa v. Mullin*, 834 F. Supp. 3d 957, 963–64 (C.D. Cal. 2026); *Salazar-Sorto*, 2026 WL 2621203, at *6 (excusing exhaustion where detention interfered with the petitioner's care of his family). Whether an Immigration Judge must consider alternatives to detention before denying release, particularly on flight risk, is also a recurring legal question that weighs against requiring exhaustion. *Id.*

117. In the alternative, if the Court concludes that the Board should first review Count I, or that it should await the Immigration Judge's memorandum or the hearing recording, Petitioner asks that the Court stay Count I rather than dismiss it. *Leonardo*, 646 F.3d at 1160 (a court "ordinarily should either dismiss the petition without prejudice or stay the proceedings"). Any deferral of Count I should not delay Counts II through IV. Those claims require no exhaustion (¶ 113) and no hearing record, and they are ripe for decision now. Petitioner asks the Court to decide them on Respondents' return.

**J. Immediate Release Is the Appropriate Remedy**

118. "Habeas is at its core a remedy for unlawful executive detention ... [and] [t]he typical remedy for such detention is, of course, release." *Andres*

*Oswaldo S.O.*, 2026 WL 2935753, at *3 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Habeas remedies aim "to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). Here that position is liberty.

119. Courts that find a § 1226(a) custody decision legally deficient have likewise ordered release where the record supplies no lawful basis for continued detention. *Santiago Morales*, 2026 WL 2678274, at *8 (release within 24 hours after the same Immigration Judge's flight-risk denial); *Garcia Del Solar*, Dkt. 12 at 12–13; *Villa*, 834 F. Supp. 3d at 964.

120. Remand for another hearing would be inadequate. In *Villa*, the court first ordered a new hearing; the Immigration Judge repeated the same errors, and the court then ordered release. 834 F. Supp. 3d at 960, 964. Other courts, including within this Circuit, have declined to order another hearing once the administrative process has already failed to supply an individualized determination, reasoning that a further hearing would only prolong a detention that was unlawful from the start. *Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 U.S. Dist. LEXIS 78932, at *8–13 (D. Idaho Apr. 7, 2026); *Mubanga v. Mullin*, No. 26-cv-02565-JO-AHG, 2026 U.S. Dist. LEXIS 148785, at *1–4 (S.D. Cal. July 6, 2026); *Zheng v. Rokosky*, No. 26-cv-01689, 2026 U.S. Dist. LEXIS 60485, at *10–13, *29 (D.N.J. Mar. 23,

2026). Petitioner does not rely on these decisions to criticize Immigration Judges generally, but because the defect here lies in the decision process itself.

121. Courts order release where a warrantless arrest violated § 1357(a)(2) or where custody began without required process, and they reject the government's position that "at most" a bond hearing is warranted. *Sanchez Marquez*, 2026 WL 2948874, at *6–7; *Valtierra Moreno*, 2026 WL 2844961, at *3; *Villa Cambron*, 2026 WL 2584950, at *4–7; *Perdomo Rivera*, 2026 WL 2276935, at *3; *Diaz Escalante*, 2026 WL 2364792, at *4 ("Providing Petitioner a bond hearing would not remedy the Fifth Amendment violation he has already experienced. Only release from detention can accomplish that now."); *Cardenas v. Giles*, 2026 WL 2722730, at *2–5 (C.D. Cal. Sept. 14, 2026).

122. The October 5 denial does not change that result. Release has been recommended even where an Immigration Judge had found the petitioner a danger and a flight risk, because the arrest lacked a warrant or pre-arrest escape determination. *Ramirez Perez*, 2026 WL 2123306, at *2, *4. And where § 1226(a) makes a warrant the predicate to a lawful arrest, "it would make little sense to limit [the petitioner's] relief pursuant to that statute." *Abdirahman A.*, 2026 WL 2824339, at *2.

123. Respondents will argue that, even if the July 3 arrest and detention were unlawful, the October 5 decision now independently authorizes custody. *See Jacinto Chacon*, 2026 WL 2127177, at *3. The habeas remedy for an unconstitutional seizure, however, is to restore the status quo ante, "to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013). **Before July 3, Petitioner was at liberty. A later hearing at which he bore the burden, and which produced no stated findings, did not restore what was taken without process. It also did not supply the pre-deprivation hearing the Constitution required.** *Bueso Flores*, 2026 WL 2678329, at *4. Courts in this District "have ordered release even where a belated bond hearing has taken place." *De La Rosa Gallegos*, 2026 WL 3027134, at *6 (quoting *Kumar v. Rios*, 2026 WL 1764923, at *7).

124. The October 5 decision also cannot be the "unchallenged" basis on which *Jacinto Chacon* turned. Petitioner challenges it here (Count I) and before the Board (¶ 47). If the Court defers Count I, that challenge remains pending; deferral does not convert the October 5 decision into an unchallenged basis for detention.

125. Release does not leave the government without recourse. Under the relief Petitioner requests, Respondents may seek to re-detain him after notice and a

hearing at which they prove, by clear and convincing evidence, that he is a danger or a flight risk that no condition can mitigate (¶ 126). *Villa Cambron*, 2026 WL 2584950, at *6–7; *Hernandez*, 2026 WL 2099232, at *1. That is the process due before liberty is taken from a person in Petitioner's position. Ordering release with that safeguard remedies the violation without foreclosing a lawful determination. Leaving him in custody on the strength of a hearing that lacked those protections would allow the government to "cure" the violation after the fact, which courts have refused to permit. *Villa Cambron*, 2026 WL 2584950, at *6.

126. Release is also the remedy courts have ordered for detention of a former DACA recipient without pre-deprivation process, including where the petitioner had driving-related arrests and a DUI conviction. *Hernandez*, 2026 WL 2099232, at *1 (rejecting a recommended bond hearing in favor of release); *Ramirez*, 2026 WL 1078250, at *1, *3; *Villa Cambron*, 2026 WL 2584950, at *6–7; *Bueso Flores*, 2026 WL 2678329, at *4–5. Petitioner's record—no conviction, an uncharged 2019 arrest, and a misdemeanor citation—is less serious than the record in *Ramirez*.

127. Release on conditions fully protects the government's interests. Petitioner asks that Respondents be ordered to release him from the Adelanto ICE

Processing Center within 24 hours, into the care of his mother or his sponsors, with all of his property and documents, on the following conditions:

(a)*Residence.* He will reside with his mother at 1 Palomino Lane, Carson, California 90745, and will notify ICE and the Immigration Court in writing within 48 hours of any change of address, including by filing Form EOIR-33/IC.

(b)*Immigration proceedings.* He will appear at every hearing in his removal proceedings, beginning with the November 3, 2026 master calendar hearing.

(c)*Criminal matter.* He will appear at every proceeding in any criminal case arising from the July 2, 2026 citation and, within 14 days of release, will address any missed appearance date with the Superior Court.

(d)*No driving.* He will not operate any motor vehicle until any criminal matter arising from the July 2, 2026 citation is resolved and he holds a valid license. His sponsors, Angela Sucely Rodriguez and J. Octavio Rodriguez, will provide transportation to every hearing and appointment (Ex. F at 4–7).

(e)*Abstinence and testing.* He will abstain from cannabis, alcohol, and any controlled substance not lawfully prescribed to him, and will submit to drug and alcohol testing as ICE or any supervising agency directs.

(f)*Assessment and treatment.* Within 30 days of release, he will complete a substance-use assessment by a licensed California provider, will comply with any recommended education or treatment, and will provide written proof of enrollment and completion to ICE.

(g)*Law enforcement contact.* He will not violate any federal, state, or local law.

128. To make release effective, Petitioner asks that Respondents be ordered to file a notice of compliance within 48 hours of release, identifying the date and time of release and any conditions imposed, and that Respondents not transfer Petitioner outside this District before release.

129. Prospective protection against re-detention is necessary to make release effective. ICE arrested Petitioner at the jail door after planning the arrest for hours, without a warrant or any individualized determination, on a record that misstated his pending DACA request (¶¶ 32–36). His removal proceedings will continue for months, during which ICE could re-arrest him at any check-in. Courts granting release in comparable circumstances have barred re-detention, absent

exigency, without notice and a pre-detention hearing at which the government bears the burden of proving danger or flight risk by clear and convincing evidence. *Hernandez*, 2026 WL 2099232, at *1; *Villa Cambron*, 2026 WL 2584950, at *7; *Bueso Flores*, 2026 WL 2678329, at *5; *Andres Oswaldo S.O.*, 2026 WL 2935753, at *3; *Valtierra Moreno*, 2026 WL 2844961, at *3–4. Petitioner has suffered irreparable injury, damages are inadequate, and the balance of equities favors requiring basic process before any re-detention. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

130. In the alternative, Petitioner asks that the Court conduct a custody hearing itself within seven days, or order a hearing within seven days before an Immigration Judge other than the one who issued the October 5 order, at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger and that no condition or combination of conditions could reasonably assure his appearance and the safety of the community; the decisionmaker states findings and reasons on the record and addresses the evidence in ¶ 56; and Petitioner is released if no such hearing occurs. *Bueso Flores*, 2026 WL 2678329, at *4–5; *Villa Cambron*, 2026 WL 2584950, at *7.

131. The documents bearing most directly on these claims are in Respondents' exclusive possession, and § 2243 requires the return to certify "the true cause of the detention." Petitioner asks the Court to order Respondents to file with their return: (a) any Form I-200, showing its date and time of issuance; (b) the Form I-286 or any other initial custody determination; (c) all documentation of any pre-arrest likelihood-of-escape determination, including the Field Operations Worksheet referenced in the I-213; (d) the Form I-247G and related records of July 3, 2026; (e) the USCIS notices denying Forms I-821D (IOE9448486887) and I-765 (IOE9448486888), and any request for evidence or notice of intent to deny that preceded them; and (f) the recording or transcript of the October 5, 2026 custody hearing and any memorandum the Immigration Judge prepares. If any such document does not exist, Respondents should so state in a sworn declaration identifying the search conducted. *See* 28 U.S.C. § 2243; Rules Governing Section 2254 Cases, Rules 1(b), 5, 7; *Santiago Morales*, 2026 WL 2678274, at *2 (ordering filing of the bond-hearing transcript).

132. Petitioner reserves the right to amend or supplement this petition once those records, the Immigration Judge's memorandum, or the BIA's decision become available.

## VII. CAUSES OF ACTION

### Count I — Fifth Amendment Due Process and 8 U.S.C. § 1226(a) (Continued Detention Under a Legally Deficient Custody Determination)

Petitioner incorporates the foregoing paragraphs. The October 5, 2026 custody order is the only decision Respondents can cite for Petitioner's present detention. It states no reasons; makes no precise or separate finding on danger, as *Matter of Urena* requires; does not address the highly probative evidence that was before the Immigration Judge, including DHS's own repeated grants of deferred action and the sponsors' commitments; and does not consider alternatives to detention as to flight risk. Petitioner's continued detention under that order violates the Due Process Clause and 8 U.S.C. § 1226(a). *See* Part VI.B.

### Count II — Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) (Arrest Without a Produced Pre-Arrest Warrant or Likelihood-of-Escape Determination)

Petitioner incorporates the foregoing paragraphs. Respondents arrested Petitioner on July 3, 2026 after planning the arrest in advance with full knowledge of his location. They have produced no warrant issued before the arrest, and the I-213 records no determination that he was likely to escape before a warrant could be obtained. Unless Respondents produce a pre-arrest warrant, they lacked

statutory authority to take him into custody, and his detention violates the laws of the United States. 28 U.S.C. § 2241(c)(3). *See* Part VI.E.

**Count III — Violation of 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 287.3(d), 236.1(c)(8), and 1236.1(d)(1) (Detention Without an Initial Custody Determination)**

Petitioner incorporates the foregoing paragraphs. Detention under § 1226(a) requires an initial custody determination by DHS, which after a warrantless arrest must be made within 48 hours. Respondents have produced no Form I-286 or other initial custody determination and never initiated custody review; the only custody hearing Petitioner has received resulted from his own request. His custody has lacked its required predicate since its inception, and proceedings he initiated did not supply it. *See* Part VI.F.

**Count IV — Fifth Amendment Due Process (Deprivation of a Protected Liberty Interest Without Pre-Deprivation Process)**

Petitioner incorporates the foregoing paragraphs. Eleven years of affirmative, individualized grants of deferred action, three of them made with the 2019 arrest in DHS's files, together with a timely renewal request pending when he was seized, gave Petitioner a protected interest in his continued freedom and heightened the process due before the government could take it. Respondents

detained him without notice, without a hearing before a neutral decisionmaker, and without any individualized determination, although pre-deprivation process was feasible and the arrest was planned in advance. That violated the Due Process Clause. *See* Part VI.G.

**Count V (In the Alternative) — Fifth Amendment Due Process, As Applied (Allocation of the Burden of Proof)**

Petitioner incorporates the foregoing paragraphs. Petitioner was arrested without a produced warrant or escape determination, received no initial custody determination, was seized after eleven years of government-conferred deferred action, and obtained a custody hearing only because he requested one. As applied to him, due process required that Respondents bear the burden of proving by clear and convincing evidence that detention is necessary to prevent flight or danger. The October 5 hearing placed the burden on Petitioner. This Count is pleaded in the alternative to immediate release. *See* Part VI.H.

## VIII. PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests that this Court:

(1)Assume jurisdiction over this matter;

(2)Order Respondents to show cause within three days why the writ should not issue, 28 U.S.C. § 2243, and to file with their return the records

listed in ¶ 128, including the recording or transcript of the October 5, 2026 custody hearing, or a sworn declaration that any such record does not exist;

(3)Order Respondents not to transfer Petitioner outside the jurisdiction of this Court while this petition is pending;

(4)Declare that Petitioner's continued detention under the October 5, 2026 custody order violates the Due Process Clause and 8 U.S.C. § 1226(a) (Count I);

(5)Declare that Respondents arrested Petitioner without the authority required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), that his custody commenced without the initial custody determination required by 8 U.S.C. § 1226(a) and its regulations, and that his detention without pre-deprivation process violated the Due Process Clause (Counts II–IV);

(6)Grant the writ of habeas corpus and order Respondents to IMMEDIATELY RELEASE Petitioner from the Adelanto ICE Processing Center within 24 hours, on the conditions set out in ¶ 124 or such conditions as the Court deems appropriate, and to return all property and documents taken from him;

(7)Order Respondents to file a notice of compliance within 48 hours of release, stating the date and time of release and any conditions imposed;

(8)Order that Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner during his removal proceedings, absent exigent circumstances, without at least seven days' written notice describing the change in circumstances asserted and a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of establishing by clear and convincing evidence that he is a danger to the community or a flight risk that no condition of release can mitigate, and at which Petitioner may have counsel present;

(9)In the alternative, order a custody hearing within seven days consistent with ¶ 127, with release if none occurs (Count V);

(10)In the further alternative, stay Count I pending the BIA appeal and decide Counts II through V; and

(11)Grant any further relief this Court deems just and proper.

Respectfully Submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 19, 2026

## PROOF OF SERVICE

I hereby certify that on October 19, 2026 I served a copy of the attached PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, by EMAIL DELIVERY to:

U.S. Attorney's Office:

**USACAC.ImmHabeas@usdoj.gov**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: October 19, 2026